UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARBARA J. HILL,

        Plaintiff,

                              CASE NO. 2:12-CV-14228
v.                            HONORABLE GEORGE CARAM STEEH

UNITED OF OMAHA LIFE
INSURANCE COMPANY,

        Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR ENTRY OF JUDGMENT (Doc. 11) AND DENYING
PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT (Doc. 12)**

Plaintiff Barbara Hill filed a complaint on September 24, 2012 under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., seeking judicial review of defendant United Omaha Life Insurance Company's ("United") denial of her claim for short term disability benefits. United is the disability insurance carrier for Hill's former employer, Motor City Casino, where she worked for twelve years from November 15, 1999 until May 5, 2011, when she was terminated. Her last position was that of a "slot floor person" where she worked paying jackpots, answering questions, and acting as a hostess of sorts in the slot area. Hill contends that her short term disability began on her last day of employment, and claims that the injury involved a myriad of psychological and physical conditions, including stress and anxiety due to her work conditions, back problems, knee problems, high blood pressure, injuries allegedly caused by a 2002 fall down an escalator at work and an injury of her leg, ankle, and knee at work in 1998. Omaha denied her claim

-1-

for disability benefits which it then affirmed on administrative appeal. For the reasons stated below, Omaha's motion for entry of judgment shall be granted, and Hill's motion for entry of judgment shall be denied.

## I. Standard of Review

Courts review challenges to benefit determinations under the *de novo* standard which the parties agree is the proper standard of review in this case. Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609, 616 (6th Cir. 1998). Under the *de novo* standard, this Court will review the administrative record "without deference to the decision or any presumption of correctness." Perry v. Simplicity Engin., a Div. of Lukens Gen. Indust., Inc., 900 F.2d 963, 966 (6th Cir. 1990).

## II. Guidelines for Resolving ERISA Benefits Claim

This is an action where Plaintiff seeks to recover benefits under an ERISA plan pursuant to 29 U.S.C. § 1132(a)(1)(B). Recognizing the Sixth Circuit's ruling that summary judgment is not an applicable mechanism for resolving ERISA claims for benefits, both sides have properly filed motions for entry of judgment. Wilkins, 150 F.3d at 616-20. Having rejected the usual dispute resolution mechanisms used by district courts, the Sixth Circuit has fashioned its own mechanism by setting out guidelines for resolution of ERISA denial of benefits cases:

> [A] district court should employ the following steps in adjudicating an ERISA action:
>
> 1. As to the merits of the action, the district court should conduct a *de novo* review based solely upon the administrative record, and render findings of fact and conclusions of law accordingly. The district court may consider the parties' arguments concerning the proper analysis of the evidentiary materials contained in the administrative record, but may not admit or consider any evidence not presented to the administrator.

> 2. The district court may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part.  This also means that any prehearing discovery at the district court level should be limited to such procedural challenges.
>
> 3. For the reasons set forth above, the summary judgment procedures set forth in Rule 56 are inapposite to ERISA actions and thus should not be utilized in their disposition.

Wilkins, 150 F.3d at 619.  Based on the above quoted guidelines, this Court must review the Plan administrator's decision, under the *de novo* standard of review, based solely upon the administrative record.  The Court must then render findings of fact and conclusions of law.  The Court may consider the parties' analysis of the evidence, but in this case may not admit or consider any evidence not presented to the administrator.

### III.  Findings of Fact

Hill was suspended from her employment on April 29, 2011 due to job errors and was terminated on May 6, 2011. (Administrative Record ("AR") at 112).  Hill thereafter timely filed a claim for short term disability benefits with United.  In support of the claim, she submitted various handwritten medical records from Dr. Redwan Uddin, M.D., who submitted an undated attending physician's statement ("APS") stating a diagnosis of "anxiety, stress, insomnia, HTN, back pain, knee pain" and symptoms of "headache - HTN - back pain, knee pain - ankle pain," with a date of April 29, 2011, as the date her symptoms first appeared.  (AR at 177). Dr. Uddin's APS further states that her inability to work began on May 6, 2011, her condition was work related, and she should be able to return to work in three to six months.  Id.   United received Dr. Uddin's APS on May 18, 2011.  Dr. Uddin also submitted x-rays regarding Hill's complaints of back pain and MRI records regarding her alleged knee pain in her right leg.  (AR at 168-70).  The x-rays showed "[t]here is

intervertebral disc narrowing between L5 and S1 secondary to degenerative disc disease. There is lipping anteriorly between L2 and L3. No additional abnormalities are evident." (AR at 169). The MRI showed '[t]here are mild degenerative changes in the knee, particularly involving the medical compartment where there are degenerative subchondral cysts within the medical tibial plateau. There is chondromalacia (softening of the cartilage) involving the articular surfaces of the femoral condyles and patella. There is no discrete meniscal, cruciate or collateral ligament tear." (AR at 170). Dr. Uddin referred Hill to an orthopedic doctor, but there is no evidence that Hill ever followed up with that recommended care. (AR at 194).

In addition to these medical records, Hill also submitted a copy of Dr. Uddin's certification of her alleged inability to work for purposes of the Family and Medical Leave Act ("FMLA") which states that Hill's medical condition began on May 6, 2011 and was expected to last until July 6, 2011. (AR at 162-63). His certification identifies "anxiety, stress, HTN, and knee pain" as the medical condition for which she sought leave. The above records of Dr. Uddin were the only records submitted to United in support of her claim for short term disability benefits. By letter dated July 21, 2011, United denied her claim for disability benefits. (AR at 149-51). In that letter, United informed Hill that "[t]he medical records we have received do not support your inability to perform your regular job as a Slot Floor Person. The MRI of the right knee shows degenerative findings. There was no evidence of a tear that would suggest limitations. The x-ray of your back also did not show any fracture or anything that would limit you from performing your job. Your doctor had referred you on (sic) to a[n] orthopedic doctor and there was (sic) no notes of you going to that doctor." (AR at 150).

Hill timely filed an appeal of the denial of her claim. In support of her appeal, she submitted additional medical records, including the report of Gerald Shiener, M.D., who performed a psychiatric evaluation on December 13, 2011 and submitted a report dated December 14, 2011. (AR at 116-23). Dr. Shiener's report indicated that Hill had not complained of any physical injuries, but instead had complained of workplace anxiety beginning after about three to four years on the job because she was allegedly singled out by female supervisors because of her condition causing urinary frequency, was subject to sexual harassment by a male manager, encountered a management group in her area that was allegedly discourteous, demanding, and tyrannical, and that she was allegedly mistreated for complaining about her managers to higher level supervisors. (AR at 117-19). Dr. Shiener stated his diagnosis that Hill suffered from major depression with features of a posttraumatic stress disorder, but that no physical condition was diagnosed. (AR at 122).

In addition to Dr. Shiener's report, Hill also submitted psychiatric records from Lincoln Behavioral Services who treated Hill from October 6, 2011 to January 20, 2012. (AR at 83-96). Their records show that there was an intake assessment taken by Ralph McMinn on October 6, 2011 wherein Hill reported "heart problems, allergy, sinus problems, stomach problems, poor vision, hearing problems, dizziness, hypertension, bronchitis, arthritis, and headaches." (AR at 84). Her intake assessment lists her diagnosis as major depressive disorder. (AR at 86). Shabana Ahmed, M.D., performed a psychiatric evaluation on October 31, 2011 and diagnosed Hill as suffering from major depression. (AR at 90). Those records further show that Hill failed to show up for follow-up appointments with Dr. Ahmed on November 29, 2011 and January 20, 2012. (AR at 91-

92). Although Dr. Ahmed prescribed three psychotropic medications, Intelliscript showed that Hill never filled any of the prescriptions. (AR at 207).

In support of her appeal of the denial of her claim for short term disability benefits, Hill also submitted medical records from Paul Cullis, M.D., Clinical Associate Professor of Neurology at Wayne State University School of Medicine, who examined her on September 27, 2011 for evaluation purposes only. (AR at 111-14). According to his report, Hill complained that she was terminated because of harassment and that she was unable to perform all of her duties because of pain in her back, neck, knee, and ankle, and that pain in her knee and ankle was due to an injury at work in 2008. (AR at 112). Dr. Cullis opined that Hill suffers depression, headaches related to the depression, and back pain related to a workplace injury in 2002. (AR at 113-14).

United had two of its case management nurses, April Williams, R.N., C.C.M., and Denise Theisen, R.N., B.S.N., (AR at 187-97) and its medical director, Timothy Tse, M.D., review the medical records submitted by Hill. (AR at 199-207). Williams, Theisen, and Dr. Tse all concluded that the medical records did not support Hill's claim for short term disability benefits. (AR at 187-97 and 199-207). In her report, Williams found that "[t]here is minimal information provided in the documentation to address restrictions and limitations." (AR at 190). Williams noted that "[a]nxiety and stress are psychosocial factors that do not result in functional impairment." Id. She further found that much of the documentation submitted by Hill was barely legible as it was poorly handwritten. Id. This Court had the same difficulty when reviewing the Administrative Record, but has endeavored to give Hill every benefit of the doubt as to the contents of the handwritten materials.

In her report, Theisen found Hill's claims of a knee or back injury was not supported by the evidence as the MRI merely showed some mild degenerative changes to the knee, and there was no proof that Hill has an "altered gait, requires gait assistance or has any problems with [her] leg giv[ing] way [to] weakness or falls." (AR at 194). Similarly, in his report, Dr. Tse found that based upon his review of the medical records submitted "[n]o severe physical impairment from her claimed back and knee pain can be supported." (AR at 206). He further found inconsistencies between the records submitted by Dr. Cullis and Dr. Ahmed whereby Dr. Cullis reported that Hill was alert and oriented, her memory, attention and concentration were good, and he did not discuss any symptoms of or diagnoses of major depressive disorder, panic disorder, or generalized anxiety disorder. Id. at 207. He further found that Dr. Ahmed's diagnosis that Hill suffered from generalized anxiety disorder and panic disorder was not supported by anxiety and panic symptoms. Id. In conclusion, Dr. Tse found "no credible evidence supports a psychiatric impairment that would have precluded the insured from performing her job from 5/6/11 forward." Id.

On February 17, 2012, United denied Hill's appeal finding "[t]he medical information in Ms. Hill's file does not support a physical or psychiatric impairment that would prevent her from performing the material duties of her regular job. There is no evidence of a significant change in her mental or physical functional capacity on or around her date last worked." (AR at 58).

## IV. Conclusions of Law

In support of her original claim, Hill relied solely on the report of Dr. Uddin who opined that Hill became disabled on the date of her discharge because of anxiety, stress, anxiety, back and knee pain but the only records he submitted in support of these claims

were x-rays and MRI's which showed only a degenerative condition, not the onset of a disabling condition. (AR at 177, 187-207). Those records did not support her claim for short term disability benefits. Following the original denial of her claim, Hill appealed and sought to supplement her petition with reports from three other doctors, but these records proved to be contradictory and inconclusive.

There are glaring inconsistencies between Hill's varying versions of her medical condition as told to Dr. Uddin, Dr. Cullis, Dr. Shiener, and Dr. Ahmed. She complained to Dr. Cullis that her injuries were caused by a fall on an escalator at the Casino in 2002 and a work related injury to her leg and ankle in 1998, (AR at 111-12), but she did not complain that her alleged disability was connected to any work related injuries to Dr. Shiener, (AR at 117-23), and Dr. Uddin's records are too incomplete to determine her alleged cause of injury, although he reports that she first manifested symptoms of alleged disability on April 29, 2011, the day she was suspended from her job. (AR at 162-63, 177). Likewise, Dr. Ahmed's report does not mention the alleged workplace injuries as the cause of her ailments, but reports claims of workplace harassment. (AR at 89). Moreover, in his evaluation of Hill's condition, Dr. Cullis reported that Hill complained of right knee pain, (AR at 111), but in her proposed conclusions of law, Hill claims she suffers a disability in her left knee. (Doc. 12 at 16). While the Court assumes this to be a mere clerical error, it is indicative of the sloppy and unreliable manner in which Hill complains of every conceivable medical problem to various physicians, each time altering her complaints, sometimes complaining of physical ailments, other times alleging psychological impairments, identifying a different basis for the onset of her condition at every turn.

Hill's assertion of a laundry list of alleged chronic ailments cannot reasonably be found to constitute sufficient proof of sudden onset disability. A careful review of the Administrative Record in this case leads the Court to conclude that Hill stopped working on May 6, 2011, not because her back or knee pain suddenly became debilitating on that date or some psychological condition manifested itself for the first time on that date, but rather, simply because her employer terminated her then.

In her response brief, Hill argues that she must prevail on her claim for disability benefits because the evidence she submitted is sufficient, and United failed to retain its own physician to perform its own independent medical evaluation of her. Such an evaluation was unnecessary here where the proofs submitted by Hill were contradictory and incomplete. United's review of her unconvincing medical records by two nurses and one doctor was a sufficient basis upon which to deny her claim for disability benefits.

In her motion for entry of judgment, Hill argues that because United both decides when an employee is eligible for benefits and pays those benefits, a conflict of interest exists which this Court must consider. Further, Hill argues that because Dr. Tse, United's reviewing physician, is also vice president of United, he has a conflict of interest which the Court must consider in deciding the issue. United responds that Hill's examining physicians have a similar conflict of interest, and that Hill has failed to show proof of an actual conflict of interest. The Sixth Circuit has held that the court may consider an inherent conflict of interest that may exist when a plan administrator both decides what expenses are covered and pays those expenses. See Peruzzi v. Medical Plan, 137 F.3d 431, 433 (6th Cir. 1988) (plan administrator's inherent conflict of interest additional factor

weighed when applying abuse of discretion standard). This requirement only applies, however, when there is "significant evidence" that the insurer was motivated by self-interest. Id. Hill has not introduced any evidence that United denied her claim based on improper self-interest. Even assuming that United or Dr. Tse had such a conflict of interest here, however, that fact would not alter the Court's conclusion that Hill was not entitled to short term disability benefits. The administrative record properly before this Court is simply void of any evidence entitling her to such coverage.

United also argues that Hill's claim for benefits should be denied on the basis that the underlying policy provides that where the claim results from a workplace sickness or injury for which she is eligible to receive workers compensation, that is her exclusive remedy. (AR at 26). Hill responds that although she has filed a worker's compensation claim, it has not yet been decided, and she is allowed to pursue alternative theories of recovery because if she does not, her insurance claim or worker's compensation claim may be time-barred. (Doc. 13 at 4). Hill offers as a compromise that if she is awarded worker's compensation benefits for any part of the time period for which she claims disability benefits, she will repay United for any duplication of recovery. Id. Such a compromise is unnecessary as Hill has failed utterly to prove her claim of a short term disability. She is free, of course, to pursue her worker's compensation claim in another forum.

### V. Conclusion

Having conducted a *de novo* review of this matter, the Court affirms the ERISA administrator's decision. Defendant's motion for entry of judgment (Doc. 11) is hereby

GRANTED.  Plaintiff's motion for entry of judgment (Doc. 12) is hereby DENIED.  Judgment shall be entered in favor of Defendant.

IT IS SO ORDERED.

Dated:  June 6, 2013

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 6, 2013, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---